# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:13-CR-123 |
| JESSIE CON-UI, | (JUDGE CAPUTO) |
| Defendant. | |

## **MEMORANDUM**

Presently before me is Defendant Jessie Con-ui's ("Defendant") Motion to Strike the Amended Notice of Intent to Seek the Death Penalty in Light of *Hurst v. Florida*. (Doc. 948). For the reasons that follow, the motion will be denied.

## I. Background

On October 6, 2015, Defendant filed a Motion to Strike the Death Penalty (Doc. 836), claiming that the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591-3599, is facially unconstitutional. Among others, Defendant claimed that the government was barred from pursuing the death penalty because the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002) and its progeny rendered the FDPA unconstitutional. On January 28, 2016, I issued a Memorandum and Order, rejecting Defendant's arguments and finding that the FDPA's statutory scheme was constitutional. (Docs. 867, 868). Specifically, I found that certain aggravating factors need not be included in the indictment and passed on by the grand jury since those factors are only considered at trial after a defendant has been deemed death-eligible, and, thus, do not trigger a higher punishment. *Id.* 25-26.

In the instant motion, filed on January 4, 2017, Defendant argues that the penalty-phase consideration and weighing of aggravating factors is an essential "fact" (or "element" of the underlying offense) that must be found by the jury before Defendant's penalty can be increased from life-in-prison to death. (Doc. 948, at 14). Thus, because consideration and weighing of the aggravating factors is an essential "fact" or "element" of the offense, the Fifth, Sixth and Eighth Amendments require that they be charged in the indictment and submitted to a grand jury. As the defense points out, in the instant case,

none of the non-statutory aggravating factors listed in the government's Amended Notice of Intent to Seek the Death Penalty ("ANOI") were included in the indictment or presented to the grand jury.

In my January 28, 2016 Memorandum and Order, as already explained, I rejected Defendant's argument that *Ring* and its progeny require non-statutory aggravating factors to be presented to a grand jury. Defendant, however, "moves for reconsideration of this court's ruling" in light of *Hurst v. Florida*, 136 S. Ct. 616 (2016), which held that Florida's death penalty sentencing scheme was unconstitutional because it violated the Sixth Amendment's requirement that a jury, not a judge, find each fact necessary to impose a sentence of death. (Doc. 948, at 1-2). Defendant asks for reconsideration even though I twice cited to *Hurst* in my January 28, 2016 Memorandum and Order (Doc. 867, at 12, 14).

However, despite the government's objections, I will not construe Defendant's instant motion as a request for reconsideration of my previous Order. This is so because Defendant's previous challenge sought to strike the Notice of Intent to Seek the Death Penalty, whereas his instant challenge pertains to the *Amended* Notice of Intent to Seek the Death Penalty. I agree with Defendant that "[s]hould Mr. Con-Ui be sentenced to death, it is critical that the record contain this court's ruling on the challenge to both the [Amended Notice] and the constitutionality of the FDPA in light of *Hurst*." (Doc. 965, at 8).[1]

---

[1] The instant motion also states, "Mr. Con-Ui incorporates by reference the legal arguments set forth in his prior capital motions. (ECF Docs. 836 and 849.) The defense will avoid repeating arguments made previously, but we wish to supplement the pleadings in two areas. First, the defense respectfully requests that all objections and constitutional challenges to the NOI advanced in prior motions be applied in every respect to the ANOI. For the reasons set forth in the prior motions, the ANOI violates the Fifth, Sixth, and Eighth Amendments to the United States Constitution." (Doc. 948, at 4). The instant Memorandum and Order are limited only to the evaluation of the impact of the *Hurst* decision. In every other regard, this Court's January 28, 2016 Memorandum and Order addressing Defendant's initial challenge to the original Notice of Intent stand unaffected, and the analysis therein is equally and fully applicable to Defendant's instant challenge to the *Amended* Notice of Intent. Thus, I hereby incorporate the arguments and legal authority as set forth in my previous Memorandum and Order. (Doc. 846).

## II. Analysis

Defendant asks that I evaluate the impact of *Hurst* on whether the consideration and weighing of aggravating factors during the sentence selection phase constitutes an "element" of the offense, requiring that it be charged in the indictment and presented to the grand jury. More precisely, the question is not whether the consideration and weighing of the factors is an element of the offense, but rather, whether *Hurst v. Florida* held as much. I find that it did not.

Defendant argues that,

> *Hurst*, a decision that is effecting seismic change to capital jurisprudence throughout the country, makes crystal clear that the consideration and weighing of aggravating factors by the jury is an "element" of the offense. And, critically, that this essential jury finding must occur before the guilty defendant's potential punishment can be increased from life imprisonment to the death penalty. *Hurst*, 136 S. Ct. at 620-22. As such, it must be alleged by indictment.

(Doc. 948, at 4). Defendant's motion further argues that *Hurst*, by expanding the definition of a "fact" or "element" that exposes the defendant to a greater maximum punishment to include the FDPA's weighing process, by implication incorporated nonstatutory aggravating factors into the same category. Defendant claims that both the nonstatutory aggravators and the weighing process act as functional equivalents of the "elements" of the offense and, thus, must be presented to the grand jury.

In *Hurst*, the Supreme Court found that Florida's capital sentencing procedure violated the Sixth Amendment. 136 S.Ct. at 619. The sentencing scheme at issue permitted a jury to render an advisory opinion as to whether a defendant should be subject to the death penalty, but the judge made the ultimate determination after holding a separate hearing and independently weighing the mitigating and aggravating factors. *Id.* at 620. Similarly to the sentencing procedure the Supreme Court invalidated in *Ring*, the Florida courts impermissibly did "not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622. Thus, the Court held that "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." *Id.* at 619. Accordingly, the Court found that

a jury's advisory opinion on the death penalty violates a capital defendant's constitutional rights, and struck down Florida's sentencing scheme. *Id.*

Thus, *Hurst* stands for the proposition that a capital sentencing scheme under which a jury makes a sentencing recommendation and a judge makes the critical findings needed for the imposition of a death sentence violates the Sixth Amendment's right to a jury trial. It appears, therefore, that *Hurst* merely applied *Ring*'s holding to Florida's capital sentencing procedure. 136 S. Ct. at 621-24.

*Ring* "concluded that Arizona's capital sentencing scheme violated [the *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000)] rule because the State allowed a judge to find the facts necessary to sentence a defendant to death." *Hurst*, 136 S. Ct. at 621 (citing *Ring*, 536 U.S. at 591). "Specifically, a judge could sentence Ring to death only after independently finding at least one aggravating circumstance." *Id.* (citation omitted). "Ring's judge followed this procedure, found an aggravating circumstance, and sentenced Ring to death." *Id.* In those circumstances, "[t]he Court had little difficulty concluding that the required finding of an aggravated circumstance exposed Ring to a greater punishment than that authorized by the jury's guilty verdict." *Id.* (quoting 536 U.S. at 604; quotation marks omitted). Thus, in *Hurst*, the Court concluded that Florida's capital sentencing scheme suffered from the same Sixth Amendment infirmity as the Arizona statute struck down in *Ring*. *Id.* at 621-22 ("The analysis the *Ring* Court applied to Arizona's sentencing scheme applies equally to Florida's.").

*Hurst*'s focus was on the Sixth Amendment's requirement that the findings authorizing the imposition of the sentence of death be made by the jury. *Id.* at 623 (overruling two previous cases that held otherwise). Simply put, Florida's capital sentencing scheme gave too much power to the judge. The FDPA's capital-sentencing scheme, however, is unlike the laws at issue in *Ring* and *Hurst*. Under the FDPA, a capital case does not proceed to the sentencing phase until after the jury has found a defendant guilty of one or more aggravating circumstances. *See* 18 U.S.C. § 3593(e). Because the determination of guilt of an aggravating circumstance automatically renders the defendant eligible for a

4

capital sentence, it is not possible to make a factual finding later, during the sentence selection phase, that will somehow expose a defendant to greater punishment.

> Once a jury reaches the point where it must weigh aggravating and mitigating factors and determine whether a death sentence is justified, "it is exercising discretion in sentencing that is ordinarily exercised by judges." *Sampson*, 335 F. Supp. 2d at 238. At that point, the jury is "imposing a judgment within the range prescribed by statute" for the relevant capital offense (viewing that "range" as life imprisonment without possibility of release, or death), a process which *Apprendi* itself excepts from its reach. 530 U.S. at 481; *accord Alleyne*, 133 S. Ct. at 2163.

*United States v. Sampson*, 2016 WL 3102003, at *4 (D. Mass. June 2, 2016).

Moreover, federal courts of appeal, although speaking before the decision in *Hurst* was issued, agree that non-statutory aggravating factors do not constitute "elements" of the underlying offense. *See, e.g., United States v. Fell*, 531 F.3d 197, 237-38 (2d Cir. 2008) *United States v. Mitchell*, 502 F.3d 931, 979 (9th Cir. 2007); *United States v. Brown*, 441 F.3d 1330, 1367-68 (11th Cir. 2006); *United States v. Purkey*, 428 F.3d 738, 749-50 (8th Cir.2005); *United States v. Bourgeois*, 423 F.3d 501, 507-08 (5th Cir. 2005); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir.2003).The Second, Fourth, Fifth, Sixth, Eighth, and Eleventh Circuits all hold that "[n]on-statutory aggravating factors are relevant considerations in the sentence selection decision, but do not, in themselves, determine whether a defendant is 'eligible' to be considered for the death sentence." *United States v. Lawrence*, 735 F.3d 385, 420 (6th Cir. 2013) (citation omitted). Nothing in *Hurst*, which requires a jury, not a judge, to find each fact necessary to impose a sentence of death, invites me to reconsider the logic of those decisions. *See United States v. Roof*, 2016 WL 8116891, at *4 (D.S.C. Nov. 3, 2016) ("*Hurst* held that any aggravating factor that exposes a defendant to greater punishment than the punishment authorized by the jury's guilty verdict must be submitted to a jury. Here, any aggravating factors that expose Defendant to the death penalty will be established by a jury, thereby avoiding any *Hurst* issue.").

Other courts considering this issue have reached the same conclusion. *People v. Rangel*, 62 Cal.4th 1192, 200 Cal.Rptr.3d 265, 367 P.3d 649, 681 (2016), *reh'g denied* (June 15, 2016) (holding that *Hurst* did not render unconstitutional California's capital

sentencing scheme, which utilizes a jury in the fact-finding process); *Ex parte State*, 2016 WL 3364689, at *6 (Ala. Crim. App. June 17, 2016) (holding that Alabama's capital sentencing scheme, which utilizes a fact-finding jury, remains constitutional under *Hurst* ); *In re Bohannon v. State*, 2016 WL 5817692, at *5-6 (Ala. Sept. 30, 2016); *see also United States v. Bazemore*, 839 F.3d 379, 393 (5th Cir. 2016) ("*Hurst* therefore applies only to statutory schemes in which judge-made findings increase the maximum sentence that a defendant can receive."); *United States v. Sanchez*, 2016 WL 4769722, at *2 (D. Idaho Sept. 12, 2016); *Sampson*, 2016 WL 3102003, at *4. *Cf. Rauf v. State*, 145 A.3d 430 (Del. 2016) (relying on *Hurst* to hold unconstitutional Delaware's capital sentencing scheme, which, like Florida's, left the ultimate sentencing decision to a judge).

As the Alabama Supreme Court explained in *In re Bohannon v. State*, 2016 WL 5817692, at *5-6 (Ala. Sept. 30, 2016):

> *Hurst* does not address the process of weighing the aggravating and mitigating circumstances or suggest that the jury must conduct the weighing process to satisfy the Sixth Amendment. This Court rejected that argument in *Ex parte Waldrop*, holding that the Sixth Amendment "do[es] not require that a jury weigh the aggravating circumstances and the mitigating circumstances" because, rather than being "a factual determination," the weighing process is "a moral or legal judgment that takes into account a theoretically limitless set of facts." 859 So.2d at 1190, 1189. *Hurst* focuses on the jury's factual finding of the existence of an aggravating circumstance to make a defendant death-eligible; it does not mention the jury's weighing of the aggravating and mitigating circumstances.

I alluded to this issue in the March 1, 2017 Memorandum and Order regarding the applicability of *Crawford v. Washington*, 541 U.S. 36 (2004) at the penalty phase. There, I explained the difference between the "facts" (or "elements") that are a prerequisite to the imposition of the death penalty during the guilt and eligibility phases, and the weighing of aggravating and mitigating factors during the sentence selection phase, which is not an "element" the capital offense. (Doc. 984, at 48). I reasoned that,

> [a] jury's role during the selection phase differs from its role during the eligibility stage. As the Fourth Circuit has explained, under the FDPA, "the jury finds the facts necessary to support the imposition of the death penalty in the guilt and eligibility phases of the trial." *Umana*, 750 F.3d at 348-49 (emphasis omitted). In contrast, "[d]uring the selection phase, a jury is not legally required to find any facts." *Id.* at 349. "[W]hile it may do so," the court explained, "such facts are neither necessary nor sufficient to impose the

6

> death penalty-they merely guide the jury's discretion in choosing a penalty." *Id.* It is only during the guilt and eligibility phases of a trial "that the jury makes 'constitutionally significant' factual findings." *Id.* at 347-48. This is because any fact that increases the maximum penalty should be treated as an element of an aggravated offense, *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348 (2000), and "those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offense." *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003). Indeed, the selection phase cannot alter the range of sentences a jury can impose on a defendant; rather, the jury is tasked only with selecting a sentence out of the alternatives for which a defendant has already been found eligible.

*United States v. Con-ui*, 2017 WL 783437, at *26 (M.D. Pa. Mar. 1, 2017). I also explained the difference in the January 28, 2016 Memorandum and Order, which denied Defendant's motion challenging the constitutionality of the FDPA. There, I stated that,

> [p]roof of the nonstatutory aggravating factors are not required under the FDPA to find a defendant eligible for the death penalty, but are only considered after a defendant has been deemed death eligible are the aggravating and mitigating factors weighed to determine whether the death penalty will be imposed. Therefore, nonstatutory factors do not increase the maximum penalty to which a defendant may be subjected.

(Doc. 867, at 25-26); *see also Higgs*, 353 F.3d at 298 ("The finding of a nonstatutory aggravator alone will not support imposition of the death penalty. Rather, the purpose of nonstatutory aggravators is to aid the factfinder in selecting the appropriate sentence from the available options, *i.e.*, death or life imprisonment."); *Purkey*, 428 F.3d at 749 (nonstatutory aggravators "are neither sufficient nor necessary under the FDPA for a sentence of death").

More generally, the argument that the consideration and weighing of aggravating factors is an element of the underlying offense, as Defendant posits, is flawed. During the guilt and eligibility phases, jurors are asked specific questions of fact, for instance, about whether the defendant committed the offense or whether the defendant possessed the requisite intent while committing the crime. During the sentence selection phase, however, when the presentation and weighing of aggravating and mitigating circumstances takes place, jurors are asked to decide a moral question. *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 252, 127 S.Ct. 1654 (2007) (quoting *California v. Brown*, 479 U.S. 538, 545, 107 S.Ct. 837 (1987) (O'Connor, J., concurring) (stating that each juror must reach "a reasoned

7

*moral* response to the defendant's background, character, and crime") (emphasis original)). The decision to impose the death sentence is not a product of fact-finding, but rather, a product of jurors' beliefs and experiences. A fact either exists or not, and thus a factfinder may objectively be wrong; the answer to the question whether someone should live or die is never objectively incorrect because of the moral nature of the question.

*Kansas v. Carr*, 136 S. Ct. 633 193 L. Ed. 2d 535 (2016), a Supreme Court decision issued only a week after *Hurst*, further undermines Defendant's position. While the holding in *Carr* is not directly applicable to the instant case, the Court's discussion, which juxtaposed value judgments with findings of fact, is instructive. The Court stated:

> [W]e doubt whether it is even possible to apply a standard of proof to the mitigating-factor determination (the so-called "selection phase" of a capital-sentencing proceeding). It is possible to do so for the aggravating-factor determination (the so-called "eligibility phase"), because that is a purely factual determination. The facts justifying death set forth in the Kansas statute either did or did not exist-and one can require the finding that they did exist to be made beyond a reasonable doubt. Whether mitigation exists, however, is largely a judgment call (or perhaps a value call); what one juror might consider mitigating another might not. And of course the ultimate question whether mitigating circumstances outweigh aggravating circumstances is mostly a question of mercy-the quality of which, as we know, is not strained. It would mean nothing, we think, to tell the jury that the defendants must deserve mercy beyond a reasonable doubt; or must more-likely-than-not deserve it. . . . [J]urors will accord mercy if they deem it appropriate, and withhold mercy if they do not, which is what our case law is designed to achieve.

136 S. Ct. at 642. The Court's focus on the distinction between "purely factual determinations" at the eligibility phase, and "value calls" and "question[s] of mercy" at the selection phase is telling. As other courts have pointed out, the jury's weighing of the aggravating and mitigating circumstances amounts to "a complex moral judgment" about what penalty to impose upon a defendant who is already death-penalty eligible. *United States v. Runyon*, 707 F.3d 475, 515-516 (4th Cir. 2013).

Even after the *Hurst* decision, it remains true that any fact that increases the penalty from life imprisonment to death qualifies as an element that "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. It remains true that where a factual finding is a necessary precursor to an enhanced or increased sentence,

8

such as a death sentence, there is no distinction between "elements" of the crime and "sentencing factors." *Id.* at 494. *Hurst*, however, did not expand the ruling in *Ring* and *Apprendi* to transform the "complex moral judgment" involved in selecting the appropriate punishment into an "element" of the underlying capital offense. *Hurst* could not have done so because, as I have repeatedly stated, nonstatutory aggravating factors do not establish eligibility for the death sentence. *Hurst* in no way purports to define the jury's weighing of aggravating and mitigating factors as a "fact." Nothing in *Hurst* aims to invalidate my previous findings, informed by *Apprendi* and recognized by courts across the nation, that the FDPA's weighing process is not a "fact" to be "found" by the jury but a deeply personal decision based on private beliefs, values, and experiences whereby juries, guided by mercy, make a reasoned and subjective moral judgment about the appropriate sentence.

Thus, I find that *Hurst* does not compel the conclusion that the Constitution mandates that nonstatutory aggravating factors be charged in the indictment and presented to a grand jury. Rather, *Hurst*'s holding and reasoning are limited only to capital sentencing schemes which are unconstitutional because they require a judge, not a jury, "to find each fact necessary to impose a sentence of death." *Hurst*, 136 S. Ct. at 619.

### III. Conclusion

Based on the foregoing, Defendant's Motion to Strike the Amended Notice of Intent to Seek the Death Penalty in Light of *Hurst v. Florida* (Doc. 948) will be denied.

An appropriate Order follows.


April 18, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge