**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA

v.

JESSIE CON-UI,

Defendant.

No. 3:13-CR-123

(JUDGE CAPUTO)

## **MEMORANDUM**

Presently before me is the government's Motion *in Limine* to Preclude Comparative Proportionality Evidence (Doc. 918). For the reasons that follow, the motion will be granted.

### **I. Analysis**

The government asks me to preclude Defendant from introducing at the penalty phase "comparative proportionality evidence," that is, information on other capital prosecutions, defendants, and victims, and, in particular, similarly-situated capital cases in which a sentence of death was not pursued or imposed. Comparative proportionality evidence is aimed at exploring whether a sentence of death is consistent with the sentences imposed in factually similar cases. *See* Barry Latzer, *The Failure of Comparative Proportionality Review of Capital Cases (with Lessons from New Jersey)*, 64 ALB. L. REV. 1161, 1167–68 (2001) ("The premise is that like cases should be treated alike, and if cases similar to the case under review are life-sentenced, this suggests that the death sentence is disproportionate.").

The government argues that comparative proportionality review does not constitute relevant mitigating evidence under 18 U.S.C. § 3592(a) and its eight factors,[1] and that any

---

[1] 18 U.S.C § 3592 states, in part:
    (a) Mitigating Factors.—In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:
        (1) Impaired capacity.—The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

comparisons to other cases by the jury would run afoul of Supreme Court precedents regarding the scope of relevant mitigation evidence or information. (Doc. 918, at 2-3). The government contends that the facts and circumstances of other cases, including the backgrounds and characteristics of other defendants, have nothing to do with the background and character of Defendant in the instant case, or the circumstances of his offense. *Id.* at 4. Further, the government argues that the probative value of information from other cases is outweighed by the danger of confusing the issues and misleading the jury because every case is different and it is unlikely that the jury could be fully informed as to why a death penalty was not returned in other cases. *Id.* According to the government, comparative proportionality evidence would also distract the jury from its individualized determination of whether the death penalty is justified in this case. *Id*.

Defendant argues that whether, and in what form, the defense will proffer such evidence is not a decision that can be made at this point in the litigation. (Doc. 933, at 16). However, as an abstract issue of law, Defendant argues that proportionality evidence is always an appropriate consideration for sentencing. I disagree.

For support, Defendant first points to 18 U.S.C. § 3553(a)(6), entitled "Factors to be

---

(2) Duress.—The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.
(3) Minor participation.—The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.
(4) Equally culpable defendants.—Another defendant or defendants, equally culpable in the crime, will not be punished by death.
(5) No prior criminal record.—The defendant did not have a significant prior history of other criminal conduct.
(6) Disturbance.—The defendant committed the offense under severe mental or emotional disturbance.
(7) Victim's consent.—The victim consented to the criminal conduct that resulted in the victim's death.
(8) Other factors.—Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

2

Considered in Imposing a Sentence." One of the six factors to be considered is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" *Id*. However, § 3553, which is part of the Sentencing Reform Act, is not a death-penalty-litigation statute; rather, it is a section governing the sentencing function generally. The enumerated factors are to be considered by "the Court." *Id*. Nowhere does § 3553 refer to a jury's role in a penalty phase of a capital case. I am also unaware of any capital case in which comparative proportionality evidence was permitted within the confines of § 3553. The plain language of section § 3553 limits its reach to the imposition of punishments by a judge, not a jury in a capital case. Defendant cites to no authority that extends the scope of § 3553 to capital defendants and juries.

Defendant next argues that I should follow *United States v. Sampson*, 335 F.Supp.2d 166 (D.Mass. 2004), *aff'd*, 486 F.3d 13, 44–45 (1st Cir. 2007), which held that proportionality evidence may be relevant as a mitigating factor for purposes of sentencing under the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq*. *Id.* at 195. The case, however, is of no help to Defendant because, although *Sampson* recognized the value of proportionality in the jury's sentencing calculus, it ultimately excluded the evidence. The court reasoned that,

> [i]n order to determine which of the many other cases are sufficiently similar to this case to bear on the question of proportionality, the jury would have had to hear a large amount of evidence. In effect, the court would have had to conduct many mini-trials of other FDPA cases, since a jury would be unable to perform meaningful proportionality review based on brief summaries of other cases. Rather, in order to fully appreciate the verdicts reached in those cases, jurors in this case would have had to hear substantial testimony regarding the crime and the defendant in the other cases. The amount of time that would have had to be spent educating jurors regarding all other FDPA cases in a non-prejudicial manner, which could have been measured in weeks or months, as compared to the amount of time spent on the mitigation case as a whole, likely would have diverted the jury's focus from the facts relating to Sampson and his crimes.

335 F.Supp.2d at 197. I agree. Although the FDPA eliminates considerations of undue delay, waste of time, and needless presentation of cumulative evidence from the court's calculus, it nevertheless holds that, at the penalty phase, evidence may be excluded if its probative value is outweighed by the danger of, among others, confusing the issues or

3

misleading the jury. 18 U.S.C. § 3593(c).

Although Defendant points out that "[w]hether, and in what form, the defense will proffer such evidence is not a decision that can be made at this point in the litigation," (Doc. 933, at 16), to permit the introduction of any type or form[2] of this particular class of evidence would turn the trial into a series of mini-trials "over the facts and circumstances of other prosecutions, in a situation where the specific facts and circumstances and the exact reason the juries reached their decisions in those other prosecutions are not available to the parties." *United States v. Taylor*, 583 F. Supp. 2d 923, 936 (E.D. Tenn. 2008), *aff'd*, 814 F.3d 340 (6th Cir. 2016). Death penalty trials take a substantial amount of time and effort and stretch over several weeks. It is impossible to meaningfully replicate the carefully curated trial environment in an attempt to make a jury fully appraised of the circumstances which convinced twelve other people that a death sentence was or was not justified. Even a comprehensive description and explanation of the facts of a capital case cannot fully capture jurors' credibility assessments, moral judgments, determinations of mitigating and aggravating factors, and deeply personal decisions based on private beliefs, values, and experiences.

In imposing sentences, juries take into consideration intangible matters that cannot be reduced to a mere summation of the facts of a case. Comparison of cases without those elements would be superficial. Jurors' justifications are not memorialized and thus cannot be retrieved and conveyed in an exposition of facts. This is especially true of credibility assessments, which rarely, if ever, leave the confines of the deliberation room, and which often provide the underlying rationale for the sentence. It would be speculative to suggest that a summary of facts, no matter how detailed, could reveal jurors' credibility assessments

---

[2] In *United States v. Williams*, for instance, the defendant "propose[d] to present to the jury . . . (1) a statistical summary of the number of federal death eligible cases as compared to the small number of cases in which it has actually been imposed; and (2) a brief summary of the facts of a select group of minor victim federal murder cases which are equally or more aggravated than [Defendant's] case in which the death penalty has not even been sought." 18 F. Supp. 3d 1065, 1073 (D. Haw. 2014) (internal quotations marks omitted).

and other personal and moral judgments involved in the determination of the appropriate punishment in other cases.

Permitting comparative proportionality evidence also runs the risk of improperly suggesting to jurors that their discretion is limited or should be guided by past precedent. Jurors might, thus, assign disproportionate weight to comparative proportionality evidence because, while typical mitigating factors originate internally from the defendant, such as his mental health status or the impact on his family, comparative proportionality evidence originates externally from other courts. The weight that the source of this evidence necessarily carries with it presents a high risk of misleading and confusing the jury by suggesting that its sentencing discretion is circumscribed.

The introduction of comparative proportionality evidence might similarly amount to an attempt at instructing the jury on the law of sentencing in capital cases, suggesting some guiding principles, which may implicitly stem from the outcomes of other trials, in the consideration of punishment in the instant case. Jurors are, in fact, not bound by the pronouncements of any court (or any other jury, for that matter) when searching the consciousness to arrive at an individual moral judgment as to the appropriate penalty for a particular defendant.[3]

Thus, I find that it would be needlessly confusing and misleading for jurors to consider comparative proportionality evidence, and I join other courts in disallowing such evidence on this basis. *See, e.g.*, *United States v. Williams,* 18 F. Supp. 3d 1065, 1076 (D. Haw. 2014) (concluding that proportionality evidence is "likely to confuse and mislead the jury"); *Taylor*, 583 F.Supp.2d at 935–36 ("Such information has no probative value and would confuse and mislead the jury with irrelevant information.") (citations omitted); *United States v. Caro*, 461 F.Supp.2d 459, 465 (W.D. Va. 2006) ("[A]llowing the defendant during

---

[3] The FDPA does allow the juries to consider as a mitigating factor that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." 18 U.S.C. § 3592(a)(4). The instant case, however, involves only one culpable defendant. *Cf. United States v. Bin Laden*, 156 F.Supp.2d 359, 369 (S.D.N.Y. 2001).

closing argument to reference totally unrelated cases in which the death penalty was not sought or the defendant was not sentenced to death, would lead to a confusion of the issues and mislead the jury."); *see also United States v. Umana,* 2010 WL 1740487, at *4 (W.D.N.C. Apr. 28, 2010); *Sampson*, 335 F.Supp.2d at 193–98.

Moreover, I find that comparative proportionality evidence is not a required mitigating factor under the FDPA.[4] *See United States v. Umana,* 2010 WL 1740487, at *4 (W.D.N.C. Apr. 28, 2010) ("Neither the FDPA nor the Constitution grants the defendant a right to such review."); *Taylor*, 583 F.Supp.2d at 935 ("The outcomes of other cases . . . have nothing to do with the defendant in this case or the circumstances of his offense or any of the mitigating factors in § 3592(a)."); *see also United States v. Regan*, 221 F.Supp.2d 659, 660–61 (E.D.Va. 2002) (concluding that "[t]he conduct of other individuals involved in totally unrelated acts of espionage has no bearing on the culpability of the Defendant's conduct for mitigation purposes").

A defendant in a capital case is constitutionally entitled to offer wide-ranging mitigation evidence. *See, e.g., Skipper v. South Carolina*, 476 U.S. 1, 8-9, 106 S.Ct. 1669 (1986) (evidence of good behavior in jail); *Eddings v. Oklahoma*, 455 U.S. 104, 113-15, 102 S.Ct. 869 (1982) (evidence of unhappy and violent upbringing); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954 (1978) ("[A]ny aspect of a defendant's character or record and any of the circumstances of the offense."); *Jones v. Polk*, 401 F.3d 257, 264 (4th Cir. 2005) (evidence of remorse). In fact, the Eighth Amendment to the Constitution mandates that capital juries be permitted to consider "any relevant mitigating factor." *Abdul–Kabir v. Quarterman*, 550 U.S. 233, 127 S.Ct. 1654, 1665 (2007). As the Supreme Court has explained, a relevant mitigating factor is one concerning "any aspect of a defendant's character or record and any of the circumstances of the offense." *Franklin v. Lynaugh*, 487 U.S. 164, 174, 108 S.Ct. 2320 (1988) (citation omitted).

---

[4] It is also now well-settled that comparative proportionality review is not constitutionally required. *Pulley v. Harris*, 465 U.S. 37, 46, 104 S. Ct. 871, 877 (1984).

6

The outcome of other cases, however, is not an "aspect of a defendant's character or record and any of the circumstances of the offense." I have no reason to think that the term "mitigating factors," as used in the FDPA, encompasses facts having nothing to do with "a reasoned moral response to the defendant's background, character, and crime." *Penry*, 492 U.S. at 319, 109 S.Ct. 2934 (emphasis omitted).[5] "Every indication in the statute is to the contrary: all of the examples of mitigating evidence listed in § 3592(a) concern the defendant's background, culpability, or crime. The same is true for all sixteen examples of aggravating factors set forth in § 3592(c). *United States v. Gabrion*, 719 F.3d 511, 524 (6th Cir. 2013). "Although the list of seven specific factors is illustrative, not exhaustive, the description of 'Other factors' does not allow for factors of an entirely different nature from the illustrated factors. All the illustrated factors concern the defendant or the circumstances of the offense, including the culpability, participation, and punishment of other defendants." *Taylor*, 583 F. Supp. 2d at 935.

Comparative proportionality review offers no insight into the background, record, or character of Defendant or the circumstances of this case. Rather, such testimony concerns the background, record, and character of other, unrelated to this case, defendants.[6] The

---

[5] The FDPA states that "[i]In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following [enumerated factors]." 18 U.S.C. § 3592(a). However,
> the FDPA's use of the word "any" does not indicate Congress intended to greatly expand the definition of mitigating factors over that required by the Constitution. The statutory language of "any mitigating factor," 18 U.S.C. § 3592(a), is the same as the Constitutional requirement of "any relevant mitigating factor," *Abdul–Kabir*, 127 S.Ct. at 1655 (quoting *Eddings*, 455 U.S. at 112, 102 S.Ct. 869). The FDPA's exclusion of the word "relevant" has no bearing because elsewhere the statute makes clear non-relevant information is inadmissible. 18 U.S.C. § 3593(c).

*Taylor*, 583 F. Supp. 2d at 935.

[6] Particularly troublesome would be evidence about cases where the death penalty was not sought because such a decision in the federal system is made through the U.S. Attorney General's internal selective authorization process, which is influenced by policy preferences and "extrajudicial" factors that are immaterial, inappropriate, and beyond the considerations

outcomes of other cases do not make Defendant more or less deserving of a death sentence in this case. What occurred in other death penalty cases is no more a mitigating factor than it is an aggravator.

Moreover, "the FDPA has sufficient safeguards . . . such that proportionality review is not required in order for the FDPA to pass constitutional muster." *United States v. Allen*, 247 F.3d 741, 760 (8th Cir.2001), *vacated on other grounds*, 536 U.S. 953 (2002). As the Supreme Court has explained,

> [b]y requiring the jury to find at least one special circumstance beyond a reasonable doubt, the statute limits the death sentence to a small sub-class of capital-eligible cases. The statutory list of relevant factors, applied to defendants within this sub-class, "provide[s] jury guidance and lessen[s] the chance of arbitrary application of the death penalty," *Harris v. Pulley*, 692 F.2d, at 1194, "guarantee[ing] that the jury's discretion will be guided and its consideration deliberate," *id.*, at 1195. The jury's "discretion is suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg*, 428 U.S., at 189, 96 S.Ct., at 2932.

*Pulley v. Harris*, 465 U.S. 37, 53, 104 S. Ct. 871, 881 (1984). Thus, the Court concluded that a "system, without any requirement or practice of comparative proportionality review," is not violative of the Eighth Amendment. *Id*. "[T]he Constitution does not require comparative proportionality review in every capital case, but only that the death penalty not be imposed arbitrarily or capriciously." *United States v. Jones*, 132 F.3d 232, 241 (5th Cir. 1998), *aff'd*, 527 U.S. 373, 119 S. Ct. 2090 (1999) (citation omitted). The FDPA already "provides sufficient safeguards to prevent the arbitrary imposition of the death penalty," *id.*, and is "not so lacking in other checks on arbitrariness that it fails to pass constitutional muster for lack of proportionality review." *Id*. at 240.

Nevertheless, my primary consideration concerns the risk of engendering confusion and misleading the jury. Even if comparative proportionality evidence is a permissible mitigating factor under § 3592(a), and even if it has some relevance, I find that such evidence is inadmissible and improper under 18 U.S.C. § 3593(c) because any probative

---

relevant at sentencing. "[I]ntroducing evidence of that sort would inevitably amount to separate mini-trials on whether the Government should have sought the death penalty in certain cases." *United States v. Regan*, 221 F. Supp. 2d 659, 660 (E.D. Va. 2002).

value would be "outweighed by the danger of . . . confusing the issues, or misleading the jury." *Id*.

## II. Conclusion

Based on the above, the government's Motion *in Limine* to Preclude Comparative Proportionality Evidence (Doc. 918) will be granted.

An appropriate order follows.

May 10, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge